ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MICHAEL DOMINIC,

        Plaintiff,

    v.

JEAN-COSME DELALOYE,

        Defendant.

CV 12 1551
CIVIL ACTION NO. _____

JURY TRIAL DEMANDED

GARAUFIS, J.

LEVY, M.J.

## COMPLAINT

Plaintiff Michael Dominic, for his Complaint against Defendant Jean-Cosme Delaloye, alleges on personal knowledge as to matters relating to himself, and on information and belief as to all other matters, as follows:

### NATURE OF ACTION

1.      This is an action for copyright infringement and breach of contract, arising from Defendant's breach of an agreement to assist Plaintiff in the filming of Plaintiff's documentary, and subsequent illegal and unauthorized copying and use of Plaintiff's copyrighted video footage, and Defendant's creation of derivative works based on same.

### PARTIES

2.      Plaintiff is an award-winning New York-based documentarian and photojournalist residing in Jackson Heights, Queens. Plaintiff has been directing, filming and producing films for over twenty years. His works include documentaries, short narrative films, music videos, and television segments. His full-length documentary, "Sunshine Hotel," was released in 2000, and aired nationally numerous times over a two-year period on the Sundance Channel, and was nominated for numerous awards and awarded the distinction of "Best Documentary" at the

Durango International Film Festival, Silver Street Film Festival, and Cinevue Film Festival. Other awards Plaintiff has received include the nomination of his film "Tulips For Daisy" at the Akira Kurasawa Memorial Short Film Competition in Tokyo in 2006.

3.       On information and belief, Defendant Jean-Cosme Delaloye is a print and radio journalist residing in Brooklyn, NY at 126 4th Avenue, Apt. 7C, Brooklyn, NY 11217.

## JURISDICTION AND VENUE

4.       This Court has subject matter jurisdiction of this dispute pursuant to 28 U.S.C. §§ 1331 and 1338, and principles of pendent jurisdiction, because Plaintiff's copyright infringement claims arise under the laws of the United States and this Court has exclusive subject matter jurisdiction over such claims.

5.       This Court has personal jurisdiction over Defendant because his primary residence is in New York and because, among other reasons and upon information and belief, the tortious actions giving rise to Plaintiff's claims occurred in New York.

6.       Pursuant to 28 U.S.C. §§ 1391 and 1400, venue properly lies in this judicial district, as both parties reside in and/or a substantial portion of the events giving rise to the claims herein arose within this judicial district.

## BACKGROUND

7.       Plaintiff and Defendant met in Haiti in 2010. Plaintiff was in Haiti as a photojournalist documenting the aftermath of the tragic earthquake that devastated the region at that time. Defendant was in Haiti as a print journalist for Tribune De Geneve.

8.       Over the following year, the two traveled to Central America together several times to work on other journalistic projects. During one of these trips, Defendant represented that he had been a producer of a full-length documentary entitled "Razor Wire Rodeo."

-2-

Defendant further represented that, while he is not credited as producer on this film in, for example, the Independent Movie Database ("IMDB"), he was in fact a producer.

9.     In February 2011, Plaintiff and Defendant traveled to an open-air landfill in Managua, Nicaragua, known locally as La Chureca. On information and belief, La Chureca is several square miles large, and is located by Lake Managua. Several hundred people live within the confines of La Chureca, and many more live in the neighborhoods surrounding it.

10.     Before he had even met Defendant, Plaintiff had learned about La Chureca from a friend and fellow film-maker, and had determined that he wanted to visit the site and perhaps create a documentary about it. Upon visiting La Chureca, Plaintiff confirmed that he would create the documentary he had been considering—specifically, Plaintiff determined to chronicle the lives of several subjects who either resided or worked in La Chureca. Near the end of their initial trip to Nicaragua, Plaintiff informed Defendant that he wanted to make a documentary about La Chureca and the people struggling to survive within it. Defendant expressed an interest in being involved in the making of the documentary, and indicated that he would be able to obtain financing for the project from Swiss television sources.

11.     After discussing Plaintiff's idea for the documentary project, Plaintiff and Defendant verbally agreed that Defendant would support the project, that they would split expenses 50/50 up until the time that they obtained financing for the project, and that they would also split any proceeds from the project 50/50 (the "Agreement").

12.     From March through August 2011, Plaintiff returned three times to Nicaragua— on March 9-21, 2011, May 5-16, 2011, and July 15-August 30, 2011—to obtain footage for the planned documentary. Defendant accompanied Plaintiff on the first two trips, and also attended a portion of the third trip (from July 22-August 15, 2011).

-3-

13.     Plaintiff had developed contacts in Nicaragua, and, during the first filming trip in March 2011 (and on subsequent trips), worked with those contacts to identify subjects for filming.  One of the subjects identified during the first trip was Dominga Morales.  Plaintiff filmed Ms. Morales during each of the first three filming trips to Nicaragua, and expects to continue filming her in his upcoming trips this year.

14.     While Defendant had represented before he entered into the Agreement that he had a primary role in the making of a prior documentary ("Razor Wire Rodeo"), Defendant did not, in fact, have any real documentary filmmaking experience.

15.     During the time that the Plaintiff and Defendant were working together pursuant to the Agreement, Plaintiff shared with Defendant the movie files that he filmed from all three trips—Defendant was provided with high-resolution copies of the movie files from the first two trips, and low-resolution copies of the movie files from the third trip.

16.     After the third trip, Plaintiff and Defendant argued over Defendant's missteps and overall complete lack of contribution and focus to the project, and on September 16, 2011, Defendant purportedly terminated his agreement with Plaintiff concerning the filming of a documentary about La Chureca.

17.     On March 20, 2012, Plaintiff filed an application for copyright registration for 28 of his video files focusing on Dominga Morales and her family, called "Clean Hands - Dominga" (the "Work" or "copyrighted work").  Clean Hands - Dominga" had been assigned U.S. Copyright Registration No. PAU003603472, effective as of March 20, 2012.

18.     Defendant has apparently made his own movie about La Chureca and Ms. Morales, called "By My Side," and has begun actively promoting it.  Among other things, Defendant has set up an Internet site at www.bymysidefilm.com with separate pages for Trailer, Story, Cast, Credits, Photos, Screenings, Press, and Contact.  bymysidefilm.com also contains

-4-

links to Facebook and Twitter pages for "By My Side," also promoting the movie. Further, Defendant has set up a "By My Side" page on the Independent Movie Database to promote the movie, that states that the movie is "Completed" and that it is 109 minutes long. www.bymysidefilm.com credits Defendant as "Director and Producer" of "By My Side." It further states that "By My Side" is Defendant's "second film and his first film as director."

19.     A 3:04 minute trailer for "By My Side," (the "Trailer"), was posted on-line on at least the following web-sites: www.bymysidefilm.com, www.amiladodocumental.com, www.vimeo.com, www.imdb.com.

20.     The Trailer contains ideas, expressions, storylines and substantially similar footage copied from Plaintiff's copyrighted work.

21.     On information and belief, the full-length version of "By My Side" contains substantially similar footage copied from Plaintiff's copyrighted work.

### COUNT I

*(Copyright Infringement Under 17 U.S.C. § 501)*

22.     Plaintiff repeats and incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

23.     Plaintiff is the owner of a valid copyright in the copyrighted work titled "Clean Hands – Dominga", for which he has received a copyright registration from the United States Copyright Office. At all relevant times, Plaintiff has been and still is the owner of all rights, title and interest in and to his respective copyrights in the Work, which as never been assigned, licensed, or otherwise transferred to Defendant.

24.     As detailed above, Defendant, without permission or consent of Plaintiff, has infringed Plaintiff's copyright by, without limitation, copying the Work, preparing derivative works based on the Work, and distributing copies of the Work or derivatives of it by sale or other

transfer of ownership, or by rental, leasing, or lending, all without Plaintiff's permission or authorization.

25.     As a result of Defendant's unlawful and deliberate conduct as set forth above, Plaintiff has been, and will continue to be, damaged.  Defendant's infringement of Plaintiff's copyright has, upon information and belief, been deliberate, intentional, malicious, willful and knowing.

26.     Plaintiff is entitled to actual damages in an amount to be proven at trial, including profits attributable to the infringement not taken into account in computing actual damages under 17 U.S.C. § 504, and to statutory damages and attorneys' fees for any infringement that commenced after the date of copyright registration.

27.     Defendant's infringement of Plaintiff's copyright has also caused Plaintiff irreparable harm.  Unless restrained and enjoined, Defendant will continue to commit such acts. Plaintiff's remedy at law is inadequate to fully compensate him for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by 17 U.S.C. § 502, and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

## COUNT II

### *(Breach of Contract)*

28.     Plaintiff repeats and incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

29.     The parties entered into a valid contract to collaborate on the documentary envisioned by Plaintiff, when they entered into the Agreement.

30.     Plaintiff fully performed his obligations pursuant to the Agreement.

-6-

31.     Defendant breached the Agreement by at least, but not limited to, (1) making false representations both before and at the time the Agreement was entered into, (2) failing to perform under the Agreement, (3) wrongfully attempting to terminate the Agreement, and (4) breaching his duty of good faith and fair dealing by, among other things, discouraging others from cooperating with Plaintiff on Plaintiff's project, wrongfully copying Plaintiff's footage, and otherwise subverting Plaintiff's abilities to complete his project and release his documentary.

32.     As a direct result of Defendant's actions, Plaintiff has suffered damages, in an amount not yet known.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Dominic respectfully prays that the following relief be granted:

1. Enter judgment for Plaintiff and against Defendant on all applicable Counts;

2. Enter an Order requiring that Defendant, his agents, servants, employees, franchisees, licensees, attorneys and all others in active concert or participation with the defendant, be permanently enjoined and restrained from:

(a) Using, copying, or otherwise exploiting the Work and any other copyrighted work belonging to Plaintiff, including creating derivative works;

(b) Using any of the copyrighted works referenced in this Complaint, in connection with any distribution activities.

3. Award Plaintiff his actual damages, statutory damages pursuant to 17 U.S.C. § 504 for any infringement commenced after Plaintiff's effective data of registration, or other damages on all Counts, in an amount to be determined at trial;

4. Award Plaintiff his reasonable attorneys' fees and costs, pursuant to 17 U.S.C. § 505;

5. Award Plaintiff his actual damages for Defendant's breach of contract; and

-7-

6.  Grant to Plaintiff such other relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:  March 29, 2012

MICHAEL DOMINIC

By his attorneys,

WILMER CUTLER PICKERING
HALE AND DORR LLP


S. Calvin Walden
Nels T. Lippert
Cosmin Maier
399 Park Avenue
New York, NY  10022
212-230-8800 (t)
212-230-8888 (f)
Calvin.Walden@wilmerhale.com
Nels.Lippert@wilmerhale.com
Cosmin.Maier@wilmerhale.com

## **VERIFICATION**

I, Michael J. Dominic, Plaintiff in this action declare and affirm under penalty of perjury that the foregoing is true and correct.

Executed On: __3|29|2012__

_____
Michael J. Dominic