### UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| MICHAEL DOMINIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 12-cv-1551-NGG-RML |
| | ) |
| v. | ) Date of Service:  April 5, 2012 |
| | ) |
| | ) |
| JEAN-COSME DELALOYE, | ) |
| | ) |
| Defendant. | ) |

_____   )

### PLAINTIFF'S REPLY IN SUPPORT OF ORDER TO SHOW CAUSE
### FOR A PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

**I.**   **Introduction**

Defendant does not dispute that Plaintiff is entitled to a preliminary injunction if he can

demonstrate the four factors listed in *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010).

Nor does Defendant dispute that Plaintiff is in possession of a valid copyright to "Clean Hands –

Dominga," nor that Defendant had access to "Clean Hands – Dominga," nor that Plaintiff's and

Defendant's works both focus on Dominga Morales.

Defendant further admits that he re-shot the footage of Ms. Morales – literally coaxing

her to, among other things, sniff glue *again* and eat food from a dump truck *again* – so that he

"would have no financial obligation to account to [Plaintiff] as a co-owner" of his new footage.

(Delaloye Decl., ¶ 32.)  What Defendant did was wrong on many levels.  As a documentary

filmmaker, Defendant should not have attempted to re-enact scenes, including those scenes that

put Ms. Morales at risk, as well as Ms. Morales' purported "reestablishment" with her son.  As a

supposed "partner" with Plaintiff, Defendant should  not have attempted to end-run his "financial

1

obligations" to Plaintiff by making and pushing to market a cheap knock-off of Plaintiff's Work. Most importantly for the purposes of this motion, Defendant was also wrong to assume that he could avoid copyright infringement by re-shooting Plaintiff's footage rather than literally copying it into "By My Side."

A preliminary injunction is warranted in this case because Plaintiff has demonstrated a strong likelihood of success on the merits of his copyright claim, and because considerations of irreparable harm, balancing the equities and the public interest all weigh in his favor.

**II.     Plllaintiff Is Likely To Suceed On The Merits Of His Case For Copyright Infringement**

     **A.     "Clean Hands – Dominga" is Not a Joint Work and Defendant is Not a Joint Author**

Plaintiff's opening brief explained why "Clean Hands – Dominga" was not a joint work. (Pl. Br. at 13-15.)  Defendant asserts joint authorship rights based on the "parties' collaboration," (Opp. at 3), but Defendant fails to identify any collaborative *work* between him and Plaintiff. Indeed, Defendant admits that "Mr. Dominic and I never got as far as even a first rough cut of our film."  (Delaloye Decl., ¶ 34.)

Defendant cannot be a joint author if there is no "work prepared by two or more authors." "Clean Hands – Dominga" was not prepared by two authors – instead, Plaintiff is the sole author. Defendant seeks to take credit for making suggestions to Plaintiff while Plaintiff was filming, but an author "must supply more than mere direction or ideas." *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1071 (7th Cir.1994).  Rather, an author "is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id.* (quoting *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989).  Plaintiff was the sole person who translated the ideas behind "Clean Hands – Dominga" into a fixed, tangible expression – thus he is the sole author.

Defendant further fails to bear his burden of identifying *any* independently copyrightable contribution that he made to "Clean Hands – Dominga."  *See Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998) ("A co-authorship claimant bears the burden of establishing that each of the putative co-authors … made independently copyrightable contributions to the work."). Defendant asserts that this analysis requires a "nuanced inquiry," but spends a total of *three lines* in one paragraph in his brief on the subject.  (*See* Opp. at 3.)  There is nothing Defendant has pointed to as his independently copyrightable contribution to "Clean Hands – Dominga." Because he did not make any independently copyrightable contribution, Defendant has not demonstrated that he is entitled to joint authorship rights.[1]

Defendant points to some e-mails from the 2011 time-frame that he alleges supports the notion that the parties intended to be joint authors.  But the exhibits attached to Defendant's Declaration actually support Plaintiff's assertion that he is the sole author.  For example, Defendant's Exhibit H shows a Facebook entries by Plaintiff, dated July 22, 2011, that refers to

---

[1]     Defendant baldly asserts, without any support, that he actually filmed one of the 28 movie files comprising "Clean Hands – Dominga."  Plaintiff has already detailed in his initial brief and declaration how he, not Defendant, filmed all the film for "Clean Hands – Dominga." In his Reply Declaration, Plaintiff further responds that Defendant is in error and that it was Plaintiff, not Defendant, who filmed all portions of "Clean Hands – Dominga."  Defendant's unsupported  and false allegation that he filmed part of "Clean Hands – Dominga" does not satisfy his burden of demonstrating that he made an independently copyrightable contribution.

In his Declaration, Defendant also apparently seeks to get credit for being one of several interviewers that Plaintiff filmed while in Nicaragua.  None of the movie files containing any interviews conducted by Defendant are actually contained in "Clean Hands – Dominga" and thus Defendant is not entitled to claim authorship rights on this basis.  Further, even if those files were included (and they do exist), merely asking questions does not result in the creation of any "fixed, tangible expression," as required under § 101 of the copyright act.  *See, e.g.*, *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 107 (2d Cir. 2002) ("[C]opyrightable work must be 'fixed' in a tangible medium of expression" and must be "sufficiently permanent or stable to permit it to be … reproduced….Accordingly, 'as a general rule, the author is … the person who translates an idea into a fixed tangible expression'…") (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)); *see also* 17 U.S.C. § 102(a).

"*my* new documentary." (Delaloye Decl., Exh. H (emphasis added).) Further, Defendant attaches e-mails showing friction between Plaintiff and his editor back in the July 2011 time-frame (Delaloye Decl., Exhs. H, J), and Defendant further criticizes Plaintiff for firing the editor at the time. (*Id.*, ¶ 29.) But all this correspondence demonstrates is that it was *Plaintiff*, not Plaintiff and Defendant, who called the shots for the "Clean Hands" project as the mastermind and sole author of the project.

**B.**     **Defendant Has Copied Original Expression from "Clean Hands – Dominga"**

Plaintiff explained in his opening Brief that proof of copyright infringement requires proof that: "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." (Plaintiff's Opening Br. at 12 (*quoting Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995).) In his Opposition, Defendant does not appear to deny that he copied Plaintiff's Work – i.e., that he had access to Plaintiff's Work and that there are substantial similarities between Plaintiff's Work and "By My Side" – but instead denies that he copied any *copyrightable* part of that work. Plaintiff has demonstrated, however, that Defendant did in fact copy constituent elements of his work that were original.

Plaintiff does not deny that ideas are not protected by copyright – but of course Plaintiff does not base his Complaint, nor this motion, on the fact that Defendant merely copied his ideas (which he did). Instead, the side-by-side video of the three Dominga Morales excerpts (Walden Decl, Exh. 4) conclusively demonstrates that, in clip after clip and stretching well over half of the "By My Side" Trailer, Defendant copied Plaintiff's *expression*, not just his ideas. Substantial similarity will be found if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Boisson v. Banian*, *Ltd*., 273 F.3d 262, 272 (2d Cir. 2001). There can be little doubt from a review of

Walden Decl., Exhibit 4 that the "aesthetic appeal" of "Clean Hands – Dominga" and the "By My Side" Trailer are the same.  Indeed, one would be hard-pressed to determine any real aesthetic differences – instead and with minor exceptions, the camera angles, camera placement, "cinema verite" film style, lighting, and subject matter overlap and thus, not surprisingly, the shots look the same.  Defendant seeks to catalogue as many minor variations as possible (Delaloye Decl., Exh. K) – but the minor differences he accentuates (for example, that Ms. Morales is wearing a different colored shirt or that there may be minor variations in lighting) do not detract from the overwhelming similarities in "look and feel" between the two works. *Fournier v. Erickson*, 202 F. Supp. 2d 290, 295 (S.D.N.Y. 2002) (similarity and originality are determined by comparison of the "total concept and feel" of the works in question).  This is so because "the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art - the excerpting, modifying, and arranging of [unprotectible components]... - are considered in relation to one another." *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127, 134 (2d Cir. 2003).

The cases Plaintiff cites to are unavailing.  For example, Plaintiff cites to *Peter F. Gaito Architecture, LLC v. Simone Development Corp.,* 602 F.3d 57, 66 (Fed. Cir. 2010) for the proposition that a plaintiff must demonstrate substantial similarity of protectable elements in a work to demonstrate copyright infringement.  (Opp. at 6.)  But in that case, based on a comparison of the two architectural works, the Court had no problem ruling for defendant because there was "an utter lack of similarity between the two designs."  (*Id.*)  Similarly, the Court in *Iowa State U., etc. v. Am. Brdcast Co.*, 463 F. Supp. 902 (S.D.N.Y. 1978) found no similarity in the expression of separately created documentary films about an individual, but did

5

not provide any detail as to how the expression compared when viewed side-by-side.  In this case, Plaintiff is not seeking to base his copyright claim on Defendant's copying of his ideas, but rather the way in which Defendant has copied Plaintiff's expression.  As the side-by-side film (Walden Decl., Exhibit 4) demonstrates, Defendant chose to film Ms. Morales sniffing glue, scavenging from the garbage truck, eating food from the garbage truck, attending the hospital, using a nebulizer, visiting government offices, and visiting her child using a substantially similar means of expression as Plaintiff.  This is not coincidental – it is unlawful copying.

### III.    Plaintiff Has Demonstrated Irreparable Harm

While Defendant makes a great deal about Plaintiff's movie not yet being finished, (Opp. at 9-10), the status of Plaintiff's movie is inapposite to the imminence of the harm that Plaintiff will incur if Defendant's rushed knock-off film is allowed to preemptively destroy the market for Plaintiff's film.  Defendant cites no case that stands for the proposition that imminent harm cannot be suffered by authors of unfinished works.

Defendant further faults Plaintiff's evidence of harm—which includes loss of market opportunities and reputation, and is based upon a sworn declaration—yet turns around and relies on exactly the same type of evidence to show Defendant's own purported harm.  (*See* Opp. at 12-13; Delaloye Decl. ¶¶ 38-42.)  Regardless, Defendant cannot credibly contend that there are an infinite number of sources of funding for substantially similar documentaries, a market that Defendant has already begun to saturate by submitting his infringing film to over 20 film festivals and unidentified distributors.  (Delaloye Aff. ¶¶ 39-40.)  The evidence relied on by Plaintiff is plainly of the type relied upon to satisfy a showing of irreparable harm.  *See, e.g.*, *Mint, Inc. v. Iddi Amad*, Case No. 10 Civ. 9395, 2011 WL 1792570, at *3 (S.D.N.Y. May 9, 2011) (granting preliminary injunction and finding that "the loss of pricing power resulting from the sale of inexpensive 'knock-offs' is, by its very nature, irreparable."); *Polymer Techs., Inc. v.*

*Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated and is evidence of irreparable harm).

Tacitly admitting that Plaintiff will suffer harm despite his film not yet being finished, Defendant next argues that, due to the unfinished nature of Plaintiff's movie, he cannot show any non-speculative amount of damages.  However, while "court[s] must actually consider the injury the plaintiff will suffer," a showing of irreparable harm for purposes of a preliminary injunction does not require proof of the exact ***amount*** of injury in some readily quantifiable form.  *Salinger*, 607 F.3d at 80; *see also WPIX Inc. v. ivi Inc.*, 765 F. Supp. 2d 594, 620 (S.D.N.Y. 2011) ("Defendants contend that because plaintiffs cannot specify the harm, it must be speculative.  In contrast, we find that it is ***because the harms are unquantifiable, and thus irreparable***.") (emphasis added).  Indeed, by the very nature of unpublished and unfinished works, the exact market has not yet been set.  Instead, the inquiry turns on whether there is real harm that will occur in the absence of a preliminary injunction.  Defendant did not rebut a single one of Plaintiff's proffered harms, but instead merely disputed that the precise level of harm was too uncertain to measure.  (Opp. at 10.)  It is precisely because such "loss is difficult to replace or difficult to measure" that irreparable harm will occur unless Defendant is enjoined.  *Salinger*, 607 F.3d at 81.

The cases Defendant cites are inapposite to irreparable harm in a copyright case involving an unpublished work where the infringing work has not yet been widely disseminated.  In *Clonus*, the Court expressly stated that "while each of [plaintiff's] arguments might be persuasive in a different context, they do not establish more than minimal harm here ***due to the peculiar nature of this dispute*** evaluated on the basis of the current record."  *Clonus Assocs. v. Dreamworks, LLC*, 417 F. Supp. 2d 248, 254 (S.D.N.Y. 2005) (emphasis added).  Particularly,

the infringing work in *Clonus* **had already been on the market for months**, such that

"[w]hatever harm the distribution of [the infringing work] might cause to the value of

[plaintiff's] copyright 'has already occurred in virtually all material respects…'" *Id.* at 254-55

(internal quotations omitted).  Fortunately, in this case the harm can still be prevented.[2]

Finally, even the *Clonus* court recognized that "where illegal copying has occurred, the

confusion created in the marketplace will often damage the copyright holder in incalculable and

incurable ways."  *Clonus*, 417 F. Supp. 2d at 251.  Here, Plaintiff has sufficiently demonstrated

the irreparable harm he will endure absent a preliminary injunction.  (*See* Dominic Decl. ¶¶ 18-

22 (describing immeasurable harm attributable to loss of funding, grants, film festival

submissions, and licensing, based on Plaintiff's 10+ years of experience in the documentary film

industry).)

## IV.   Defendant Can Prove No Hardship Separate From That Which Results From His Inability To Continue Infringing Plaintiff's Copyright

While Defendant may lose the money invested in creating his infringing film, and profits

derived therefrom, such hardships are not legally cognizable in this case if the Court finds that

there is a substantial likelihood of success on the copyright infringement claim.  *WPIX*, 765 F.

Supp. 2d at 620-21 ("It is axiomatic that an infringer of copyright cannot complain about the loss

---

[2]     The other cases relied on by Defendant suffer from similar flaws, as they rely on either the plaintiff's delay in bringing suit or the fact that the infringing work has already been released to the public.  *See, e.g.*, *Marcy Playbround, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 281-82 (S.D.N.Y. 1998) (concluding that "a preliminary injunction here would be very much like locking the barn door after the horse is gone," where plaintiff did not even bring suit until over six months after infringing work was publicly released); *Borroughs v. Metro-Goldwyn Mayer, Inc.*, 491 F. Supp. 1320 (S.D.N.Y. 1980) (allegedly infringing work would have been third remake of same movie based on previous book, and evidence did not suggest plaintiff's deal with other licensee would fall through absent injunction).  *See also Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) (delays of as little as ten weeks sufficient to defeat presumption of irreparable harm).  Plaintiff filed suit as soon as the Copyright Office approved his application for registration, so there is no such delay here.

of ability to offer its infringing product …. Having found that [defendant] has infringed plaintiffs' copyrights, it follows that [defendant] is not legally harmed by the fact that it cannot continue streaming plaintiffs' programming, even if this ultimately puts [defendant] out of business.") (internal citations omitted).  Defendant cannot undertake illegal conduct, only to complain that he not later be allowed to profit from it.  Defendant has not shown any hardship separate and apart from that which results from his inability to continue infringing Plaintiff's copyright and, as such, it is indisputable that the balance of hardships weighs in favor of Plaintiff.

**V.**       **A Preliminary Injunction Is In The Public Interest**

Defendant misconstrues the relief requested—Plaintiff does not seek an injunction against films about La Chureca, or even films that include Ms. Morales; Plaintiff seeks only to enjoin Defendant from presenting such information in a substantially similar way.  Presumably, Ms. Morales does not eat chicken and grapes every day; yet, Defendant chose to film these exact same actions that Plaintiff chose to film previously.  Defendant even tacitly admits re-enacting Ms. Morales's first trip to the government agency to see her son—an outright fabrication, since Ms. Morales had already made that trip with Plaintiff—and Defendant's coercion of Ms. Morales to re-enact the segments of her sniffing glue are simply deplorable.  Contrary to Defendant's assertion, Plaintiff does not seek to monopolize the subject matter of the film, but seeks only to enjoin Defendant's copying of the same set of plot points chosen by Plaintiff, which, in conjunction with Defendant's copying of ***the way*** in which these plotlines are expressed, serves to eviscerate any value Plaintiff may later derive from his work.

Put simply, it is in the public interest "to promote the store of knowledge available to the public," (Opp. at 13), but the way in which the Copyright law accomplishes this noble goal is "by providing individuals a financial incentive to contribute to the store of knowledge."

Allowing Defendant to distribute a substantially similar work would frustrate the integrity of the bargain prescribed by the Copyright Act between authors and the public, and is therefore not in the public interest.  (*See* Pl. Open. Br. at 25-26.)

## VI.  Plaintiff Is Entitled To Expedited Discovery

Defendant acknowledges that expedited discovery is warranted where the party seeking the discovery demonstrates that "the requests are reasonable under the circumstances."  (Opp. At 10 (*quoting KWG Partners, LLC v. Sigel*, No. 11-cv-2890, 2011 WL 2837437, at *2 (E.D.N.Y. July 14, 2011).)  Here, Plaintiff's requests are reasonable because they are focused and time-sensitive.  Plaintiff is essentially looking for discovery into three critical items: (1) the full-length "By My Side" and other footage from Nicaragua so that Plaintiff can assess what other material exists that infringes; (2) information about to whom "By My Side" has been shown so that Plaintiff can assess what damage has been done and how to rectify it, and (3) what Defendant has done to impede Plaintiff in his efforts to finish and promote "Clean Hands."  (Walden Decl., Exhs. 24 and 25).  This is not an "entire litigation's worth of discovery," (Opp. at 15), but is instead Plaintiff's attempt to better understand the level and extent of Defendant's copying of his copyrighted works.

## VII.  CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff's Opening Brief and Declarations, Plaintiff respectfully requests that the Court grant a preliminary injunction and expedited discovery.

Dated:  April 5, 2012                              Respectfully submitted,


                                                   */s/ S. Calvin Walden*
                                                   S. Calvin Walden
                                                   Nels T. Lippert
                                                   Cosmin Maier
                                                   Wilmer Cutler Pickering Hale and Dorr LLP
                                                   399 Park Avenue
                                                   New York, NY 10022
                                                   Tel.: 212-230-8800
                                                   Fax: 212-230-8888

                                                   *Attorneys for Plaintiff Michael Dominic*